**FILED**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**MAY 1 4 2003**

**NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT**

)
FRATERNAL ORDER OF POLICE/ )
DEPARTMENT OF CORRECTIONS )
LABOR COMMITTEE, *et al.*, )
)          Civil Action No. 02-0461 (RMC)
Plaintiffs, )
)
v. )
)
ANTHONY A. WILLIAMS, *et al.*, )
)
Defendants. )
_____ )

## MEMORANDUM OPINION

Plaintiffs, a labor union representing correctional employees and three of its members, have sued the District of Columbia to force a change in the staffing patterns at the Central Detention Facility ("D.C. Jail") as operated by the District of Columbia Department of Corrections ("DOC"). They assert that a reduction-in-force ("RIF") conducted in the Spring of 2002 increased the likelihood of inmate assaults on correctional staff, thereby depriving plaintiffs of their right to safe working conditions. The District of Columbia has filed a motion to dismiss, which the plaintiffs oppose.

### Background Facts

The three individual plaintiffs were DOC employees identified to be separated from employment as a result of a RIF required by the closure of the Lorton Correctional Complex ("Lorton"), as mandated by the National Capital Revitalization and Self Government Improvement Act, D.C. Code § 24-1201, *et seq.*, and the limited budget appropriated for the DOC by the United States Congress in fiscal year 2002. The complaint was filed on March 13, 2002, to challenge a RIF



16

scheduled for March 22, 2002 and April 3, 2002.   Plaintiffs filed a Motion for Temporary Restraining Order and Preliminary Injunction seeking to stay the RIF.  The request for a Preliminary Injunction was denied after a hearing on March 25, 2002.

Prior to this lawsuit, inmates at the D.C. Jail brought suit to obtain declaratory and injunctive relief as a result of overcrowding in the jail.  *Campbell v. McGruder*, CA 1462-71 (WBB).  In that suit, Judge William B. Bryant of this Court issued an order setting a maximum population limit of 1,674 inmates for the D.C. Jail.  *Id.*  That Order was stayed at the time of the filing of the instant lawsuit, and continued to be stayed until June 24, 2002, when it was terminated.  As a result of the transfer of inmates from Lorton to the D.C. Jail following the closure of Lorton, the inmate population at the D.C. Jail rose above 1,674 and at times has exceeded 2,000 inmates.  Plaintiffs assert that the inmate count, as of December 16, 2002, was 2,369 and as high as 2,425 on December 15, 2002. Plaintiffs' Supplemental Response to Defendants' Motion to Dismiss at 2 ("Supplemental Response").

William H. Dupree, chairman, FOP/DOC Labor Committee and a named plaintiff, learned of the impending transfer of felons then held at Lorton on November 9, 2001.  The FOP/DOC Labor Committee filed an administrative complaint with the District of Columbia Public Employee Relations Board on November 20, 2001, alleging a violation of D.C. Code Section 1-618.4(a), in the alleged failure and refusal of DOC to bargain regarding health and safety conditions at the D.C. Jail resulting from the decision to increase inmate capacity.  As far as the record reveals, that complaint is still pending. Thereafter, on December 6, 2001, and February 27, 2002, defendant Mayor Anthony A. Williams signed Administrative Orders approving RIFs of more than four hundred Correctional

Officers and other DOC employees.  Subsequent to the filing of the instant complaint, DOC announced the retention of 66 Correctional Officers scheduled to be separated from service on April 3, 2002.

The Complaint is brought under the due process clause of the Fifth Amendment to the Constitution and 42 U.S.C. § 1983.  Complaint ¶ 1.

The Plaintiffs seek to require the Mayor and the DOC to "maintain adequate staffing at the D.C. Jail to protect Correctional Officers and the public."  Supplemental Response at 1.  They assert "[i]nmate assaults on Correctional Officers have increased" since June 24, 2002, when the cap on the inmate population was terminated.  *Id.* at 2.  Identifying 15 assaults between April 2002 and August 2002, the Plaintiffs stated that injuries have included "a broken hand, temporary sight loss in one eye, a broken nose and 36 stitches to one officer's face."  *Id.*  Plaintiffs want discovery and a hearing to determine the appropriate injunctive relief "to protect the District Government employees and the public" from safety risks caused by overcrowding.  They argue that the intentional nature of the overcrowding causes their substantive due process case to come within *Butera v. District of Columbia*, 235 F.3d 637, 651 (D.C. Cir. 2001) (right to protection from third-party violence when D.C. officials affirmatively act to increase or create the danger that results in the individual's harm).

The District of Columbia challenges Plaintiffs' facts.  It has submitted a chart showing a 65% decrease in inmate-on-staff assaults between 1999 and November 2002, with the period of steepest decline during the period that the Jail population increased.  Aside from the facts, and relying on *Collins v. Harker Heights*, 503 U.S. 115 (1992) and *Washington v. District of Columbia*, 802 F.2d 1478 (1986), the District of Columbia argues that this Court lacks subject matter jurisdiction over

-3-

Plaintiffs' alleged federal claim because there is no government duty protected by substantive due process to provide its employees minimal levels of safety and security in the workplace.

### Analysis

The theory of "State endangerment" was recognized for the first time in this circuit in *Butera v. District of Columbia, supra.* Under this theory, "an individual can assert a substantive due process right to protection by the District of Columbia from third-party violence when District of Columbia officials affirmatively act to increase or create the danger that ultimately results in the individual's harm." *Id.* at 651. In adopting the new theory of government liability, the Circuit Court emphasized the "stringent requirement" that the government conduct must be "'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Id.* This two-part analysis raises the questions of (i) whether there has been an affirmative act by the District of Columbia to cause harm to plaintiffs and, if so, (ii) whether that act shocks the conscience.

All parties agree that the extreme situation at the D.C. Jail has been caused by the closing of Lorton and the reduction in DOC's budget for FY 2002, which, in turn, led to the RIF that prompted the complaint. The Court is not sure that either of these decisions can fairly be traced to the District of Columbia since they were made by the United States Congress and were critical to the reorganization of D.C. at a time when the city was literally broke. Assuming, however, that Plaintiffs can complain about the actions taken by officials of the District of Columbia in response to these congressional mandates – the transfer of Lorton prisoners and the RIFs – this case must still be dismissed.

Nothing presented by the Plaintiffs is so egregious that, as a matter of law, it shocks the conscience. "Decisions concerning the allocation of resources to individual programs . . . involve

-4-

a host of policy choices that must be made by locally elected representatives, rather than by federal judges interpreting the basic charter of Government for the entire country." *Collins v. City of Harker Heights, Texas*, 503 U.S. 115, 128-29 (1992).[1] "Neither the text nor the history of the Due Process Clause supports petitioner's claim that the governmental employer's duty to provide its employees with a safe working environment is a substantive component of the Due Process Clause." *Id.* at 126. Contrary to Plaintiffs' arguments here, the Due Process Clause does not "guarantee municipal employees a workplace that is free of unreasonable risks of harm." *Id.* at 129.

The D. C. Circuit foresaw the Supreme Court's *Collins* decision in *Washington v. District of Columbia*, 802 F.2d 1478 (D.C. Cir. 1986). There, Preston A. Washington, Jr., a DOC employee at Lorton, was attacked and severely injured by a prisoner. He sued the District of Columbia under 42 U.S.C. § 1983, based, in part, on prior warnings to DOC of the dangers from overcrowding of prisoners and paucity of guards. *Id.* at 1479. While recognizing that Mr. Washington had a liberty interest in personal security under the Fourteenth Amendment, the Circuit Court concluded that "[t]he failure to provide prison guards a safe working environment does not violate any constitutional or federal-law right." *Id.* at 1480.

> Prison guards, unlike the prisoners in their charge, are not held in state custody. Their decision to work as guards is voluntary. If they deem the terms of their employment unsatisfactory, *e.g.*, if salary, promotion prospects, or safety are inadequate, they may seek employment elsewhere. The state did not force appellant to become a guard, and the state has no constitutional obligation to protect him from the hazards inherent in that

---

[1] In a series of decisions, the Supreme Court has held that "the Due Process Clause of its own force requires that conditions of confinement satisfy certain minimal standards" for persons in mental institutions, pretrial detainees, convicted felons, and persons under arrest. *Collins*, 503 U.S. at 127 (citations omitted). Plaintiffs, however, do not sue on behalf of the inmates of the D.C. Jail but in furtherance of the interests of Correctional Officers who have been affected by the municipal actions responsive to the closure of Lorton and reduction of budget.

occupation. *Accord* [*Walker v. Rowe*, 791 F.2d 507, 511 (7th Cir. 1986)] ('The state must protect those it throws into snake pits, but the state need not guarantee that volunteer snake charmers will not be bitten.').

*Id.* at 1482.

Plaintiffs have failed to distinguish these precedents or to point to any basis for this Court to come to any different conclusion. Therefore, Plaintiffs' claims under 42 U.S.C. § 1983 must be dismissed. Because Plaintiffs' federal claims have been dismissed, this Court will not exercise supplemental jurisdiction over Plaintiffs' state law claims arising under D.C. Code Ann. §§ 32-1101(6), 32-1103(a)(1) and (2). *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1996).

A separate Order will accompany this Memorandum Opinion.

ROSEMARY M. COLLYER
United States District Judge

Date: May 14, 2003

-6-